MARKHAM *v.* DEVETTE.

1. CONTRACTS—PARTIAL WRITTEN AGREEMENT—PAROL EVIDENCE AT VARIANCE.

Where portion of an agreement between parties has been reduced to writing, the written portion is no more subject to contradiction by parol than the entire contract would be had it been wholly reduced to writing (3 Comp. Laws 1929, § 13406 *et seq.*).

2. VENDOR AND PURCHASER—AGREEMENT AS TO PURCHASE PRICE—MERGER OF ANTECEDENT NEGOTIATIONS—PAROL EVIDENCE.

Where testimony shows that antecedent negotiations and

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am. Jur., Evidence, § 1135.
[2] 20 Am. Jur., Evidence, § 1099.

claimed oral agreement as to the purchase price were merged
in the final written instrument, relative to property and man-
agement thereof while plaintiff was in the armed service,
testimony pertaining to the claimed oral supplemental agree-
ment was properly rejected (3 Comp. Laws 1929, § 13406 *et
seq.*).

Appeal from Muskegon; Sanford (Joseph H.), J.
Submitted January 14, 1949. (Docket No. 84, Cal-
endar No. 44,334.) Decided February 28, 1949.

Bill by Leo M. Markham and wife against A. C.
DeVette and wife for specific performance of a writ-
ten contract to convey land. Decree for plaintiffs.
Defendants appeal. Affirmed.

*Robert S. Tubbs,* for plaintiffs.

*Henry L. Wierengo,* for defendants.

BUSHNELL, J. Defendant A. C. DeVette and Kath-
ryne DeVette, his wife, have appealed from a de-
cree requiring them to deliver a warranty deed to
plaintiffs Leo M. Markham and Minnie Markham,
his wife, in pursuance of a land contract entered in-
to by the parties on June 24, 1943, covering property
in the city of North Muskegon, and from a personal
judgment in the sum of $664.32, included in the de-
cree. The land contract recited a consideration of
$6,000, $1,125 of which had been paid, and that the
balance of the purchase price was to be paid at the
rate of $50 per month.

Almost immediately after the execution of this
contract, Markham left Muskegon to enter the armed
forces of the United States, having first given De-
Vette a power of attorney, general in its terms. At
the time the contract was executed, the property
consisted of a lot on which was a part of a building,
the superstructure thereof having been destroyed

by fire. Several years later, after Markham returned to Muskegon, a dispute arose between the parties with respect to the balance due on the contract, and the instant action for specific performance and an accounting resulted.

During Markham's absence, DeVette erected a house on the premises, applied for and secured a Federal Housing Authority mortgage in the sum of $4,500, and, after completion of the house, rented the property from February, 1944, to February, 1946, for $53 per month, from which rental he deducted his commission of 10 per cent. After charging Markham with the expenses incurred and allowing him credit for the payments made, the rentals received, and the proceeds of the mortgage, DeVette claimed there was still a balance due from Markham. He took the position that the consideration of $6,000 was only a tentative amount arrived at in order to keep the total figure within the limitations then imposed by Federal law upon the total cost of construction, and that there was a supplemental agreement to reimburse him for all expenditures made in Markham's behalf. He testified that the tentative sum was made up of three items; $1,200 for the lot, $300 construction fee, and $4,500 cost of the house. Markham's view of the transaction was that the $6,000 amount was the agreed purchase price of the lot and the new house that was to be erected thereon by DeVette.

The trial judge held that the testimony offered by DeVette in support of his contention was inadmissible, because it would violate the parol evidence rule and the statute of frauds (3 Comp. Laws 1929, § 13406 et seq., 3 Comp. Laws 1948, § 566.101 et seq. [Stat. Ann. § 26.901 et seq.]).

Appellants DeVette seek reversal of the decree and the entry of one requiring the Markhams to pay the balance of the mortgage indebtedness, and $755.-

86 in addition thereto, or, in the alternative, to as-' sume the mortgage and pay such sum, and in the event of their failure to do either, a foreclosure of the contract and restitution of the premises.

In support of appellants' contention that their excluded testimony should have been received, they rely on three tests laid down by Dean Wigmore:

(1) "Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties thereto.*   *   *   *

(2) "This intent must be sought   *   *   * in the *conduct and language* of the parties and the *surrounding circumstances.*   *   *   *

(3) "In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all* in writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation." 9 Wigmore on Evidence (3d Ed.), § 2430.

An application of these tests to the facts does not support appellants' argument. Notwithstanding the inept language of the contract and its silence as to the obligation of DeVette to build a house upon the premises, the following provisions of the contract clearly show that the parties were dealing with premises on which it was contemplated a building would be erected. These provisions read:

"I (Leo M. Markham and wife Minnie Markham, husband and wife) agree to give A. C. DeVette, realtor, both property management powers at the usual 10 per cent. rate until my return from the service. *   *   *

"It is understood and agreed between both parties that if the building is not completed and rented by December 1, 1943, an adjustment is to be made in the monthly payments of this contract agreeable to both parties and will continue until such time as the building is occupied."

Despite the incomplete undertakings of the contract, the consideration expressed therein was explicit, complete, and definite. The situation thus presented is of the nature referred to by Professor Williston, when he said:

"It should be observed, however, that a writing though incomplete may, nevertheless, be adopted as the expression by the parties of that portion of their agreement to which it relates. Accordingly, if a contract is even partially reduced to writing, the written portion is no more subject to contradiction by parol than the entire contract would be had it been wholly reduced to writing." 3 Williston on Contracts (Rev. 3d Ed.), p. 1831, citing *John Hutchison Manfg. Co.* v. *Pinch,* 107 Mich. 12.

DeVette unequivocally testified to the effect that the claimed supplemental verbal agreement relative to the purchase price was at variance with the terms of the written contract, and that it was entered into before the execution of the written agreement. The testimony in the instant case compels the conclusion that the antecedent negotiations and claimed oral agreement as to the purchase price were merged in the final written instrument. The evidence pertaining to the claimed supplemental agreement, therefore, was properly rejected.

The decree is affirmed, with costs to appellees.

SHARPE, C. J., and BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.